KANSAS CITY, FORT SCOTT & MEMPHIS RAILWAY COMPANY

*v.* SHARP.

Opinion delivered May 8, 1897.

CARRIERS—CONNECTING ROADS—LIMITATION OF LIABILITY.—A railroad company not being bound to undertake to deliver goods beyond the terminus of its line, an initial carrier may, as a condition for such an undertaking, stipulate on behalf of itself and the connecting carrier, that the liability of each shall terminate upon the arrival of the goods at the station of delivery, and that afterwards their liability shall be that of warehousemen only. (Page 117.)

Appeal from Sharp Circuit Court, Northern District.

JOHN B. McCALEB, Judge.

STATEMENT BY THE COURT.

This action was brought by T. W. Sharp against the appellant railway company to recover damages for the loss of a certain lot of boots and shoes destroyed by fire while in the depot of appellant. The case was submitted to the circuit court upon the following agreed statement of facts:

"It is agreed by and between the parties to this suit that T. W. Sharp is plaintiff, and the Kansas City, Ft. Scott & Memphis Railway Company is defendant, and that on the 14th day of November, 1893, Goodbar & Company, of St. Louis, Missouri, consigned to T. W. Sharp, at South Fork, Fulton county, Arkansas, two cases of boots and shoes, and in due course said goods were delivered to this defendant, and on the night of November 21, 1893, said goods were in the warehouse of this defendant at Mammoth Springs, Fulton county, Ark. And on said night of November 21, 1893, said warehouse with goods was destroyed by fire; that said goods were shipped under the conditions of a regular bill of lading of the St. Louis & San Francisco Railroad Company, and that said goods were the property of this plaintiff, and of the value of $47.05; that no other bill of lading was issued or offered. It is further agreed that said bill of lading was issued at the city of St. Louis, in the state of Missouri, for the carriage of said goods from that place by way of the St. Louis & San Francisco Ry. Co. and defendant company to Mammoth Springs, Arkansas, and said bill of lading contained the following clauses:

" 'Notice. This contract is accomplished, and the liability of the company as a common carrier thereunder terminates, on the arrival of the goods at the station or depot of delivery, and the companies will be liable as warehousemen only thereafter, and, unless removed by the consignee from the station or depot of delivery within twenty-four hours of their said arrival, they may be removed and stored by the company at owner's risk and expense.'

" 'Notice. In accepting this contract the shipper or other owner of the property carried expressly accepts and agrees to all its stipulations and conditions.'

" It is further agreed that the goods in question arrived at Mammoth Springs, and were stored in defendant's depot on the 18th day of November, 1893; that plaintiff resided at South Fork, about fifteen miles from Mammoth Springs, and received no notice of the arrival of said goods; that under the laws of Missouri the liability of railroad companies as common carriers ceases the moment the goods are removed from the cars and stored in the depot or on the platform at the station of delivery,

and that the liability of the companies is that of warehouseman only thereafter."

The court made the following declaration of law: "The court declares that when a contract of affreightment is for goods to be carried from one state to another, each part of said contract is to be determined by the law of the place of its performance, and not by the law of the place where said contract was made. And in this case the court holds that the contract read in evidence, though made in Missouri, does not change the liability of defendant as a common carrier under the laws of this state." And thereupon the court found in favor of plaintiff for the sum of $47.05, and gave judgment accordingly.

*Wallace Pratt* and *Olden & Orr*, for appellant.

1. The judgment should have been for appellant, whether we apply the law of Missouri or Arkansas. This was a through contract beyond its line, which the carrier was not bound to enter into, and it had the right to fix the terms under which it would carry. The New Hampshire rule does not apply where there is a special contract. 57 Ark. 112; 60 *id.* 375; 60 *id.* 100; Lawson, Car. § 236; Hutchinson, Car. § 115; 32 Ark. 399; 46 *id.* 225.

2. The Massachusetts rule prevails in Missouri, where the contract was made. *Lex loci contractus* governs. 1 W. Bl. 234; 1 Q. B. 122, 123; 3 Moore, P. C. (N. S.) 278; 129 U. S. 397; 41 Io. 247; 24 *id.* 412; 15 Conn. 539; 61 N. Y. 283; 43 Conn. 333; 81 Ga. 522; 61 Ark. 1. Under all these decisions the liability was that of a warehouseman only.

*C. E. Elmore*, for appellee.

The laws of Missouri cannot be construed to operate in this state. 27 S. W. Rep. 541; 100 Mo. 435; 95 U. S. 485; 9 Wheat. 1; 117 U. S. 34. The contract must be governed by the laws of this state. 22 Barb. (N. Y.) 118; 51 N. H. 9. The limitation was void under the law of this state. 57 Ark. 112. No notice was given appellee, and the liability as carrier continued. 60 Ark. 375; 30 S. W. Rep. 425.

RIDDICK, J., (after stating the facts.) The freight for the destruction of which the appellee, Sharp, seeks to hold

the appellant company liable in this action was shipped, under a through bill of lading, from St. Louis, Missouri, to Mammoth Springs, Arkansas, over two separate lines of railway. The initial carrier was therefore not bound to accept and undertake to deliver the goods at Mammoth Springs, for that point was beyond the terminus of its line. It had the option to accept the goods for delivery to the connecting carrier, or, if it chose to contract for their delivery at Mammoth Springs, it might impose such reasonable conditions as it saw fit to make. *Little Rock & F. S. Ry. Co.* v. *Odom*, 63 Ark. 326: Hutchinson, Carriers, § 145; *Railroad Company* v. *Pratt*, 22 Wall. 123; *Pittsburgh, etc., Ry. Co.* v. *Morton*, 61 Ind. 539; S. C. 28 Am. Rep. 682.

The condition imposed by the contract under consideration here was that the liability of the company as common carrier should terminate upon the arrival of the goods at the station of delivery, and that afterwards it should be liable as warehouseman only. This, under the facts here, was a valid limitation of the carrier's liability, and, being imposed in a through contract, inures to the benefit of the connecting carrier. Hutchinson, Carriers, § 271.

This case is distinguished from the case of *Railway Company* v. *Cravens* (57 Ark. 112) where cotton was delivered to a carrier to be transported to another point upon its own line, and where it was held that a refusal to carry except upon the conditions imposed was a wrong, by the fact that in this case the initial carrier had the right to refuse to accept the goods for shipment beyond the end of its own line. The case of *Railway Co.* v. *Spann* (57 Ark. 127) followed the Cravens case, the court saying that the same question was presented. The question under consideration here does not seem to have been raised or considered by the court in that case, and for that reason it cannot be considered as an authority upon this point. Nor is the case of *Railway Company* v. *Nevill* (60 Ark. 375) in point; for there was no contract in that case, and it turned upon the common-law liability of the carrier. But the facts here are very similar to those in *St. Louis, I. M. & S. Ry. Co.* v. *Bone* (52 Ark. 26) where it was held that no recovery could be had against the company without proof

that its negligence contributed to the loss.    The same conclusion was reached in the recent case of *Pacific Express Co.* v. *Wallace*, 60 Ark. 100.    We find it unnecessary to discuss the question whether this contract is governed by the laws of Arkansas or Missouri, for in our opinion it was valid under the law of either state.    The goods having safely arrived at the depot at Mammoth Springs, the station of delivery, under the terms of the contract made with plaintiff, the appellant's liability as a common carrier was at an end.

To make it liable as a warehouseman for the loss of the goods by fire while in the depot, it was necessary to show that its negligence contributed to the destruction of the goods.    *St. Louis, I. M. & S. Ry. Co.* v. *Bone, supra*.    As no negligence was shown, the evidence does not support the verdict and judgment.    The judgment is therefore reversed, and the case remanded for a new trial.