RIPLEY *v.* KELLY.

4-7482                                          183 S. W. 2d 793

Opinion delivered December 4, 1944.

*Wilson & Wilson,* for appellant.

*T. O. Abbott,* for appellee.

HOLT, J. The parties to this litigation are the heirs of Maggie S. Kelly, who died August 26, 1934. Appellants brought this suit against appellees, alleging an interest in the proceeds from the sales of certain mineral rights in an eighty acre tract of land in Union county. Their prayer was "that the defendants (appellees) be declared trustees for the plaintiffs (appellants) herein; and that they be required to make a full and complete accounting of all sums received from any source from said lands;" etc. Appellees answered with a general denial. The trial court found all issues in favor of appellees and this appeal followed.

The record discloses that on January 22, 1872, Joel Kelly and Mary T. Kelly, his wife, by warranty deed, conveyed for a valuable consideration, the land here involved to their son, John M. Kelly; September 20, 1909, John M. Kelly, by warranty deed, conveyed for a valuable consideration, this same land to his wife, Maggie S.

Kelly. December 17, 1919, Maggie S. Kelly conveyed by warranty deed, for a valuable consideration, to her son, J. A. Kelly, 40 acres of the land here involved; February 16, 1934, Maggie S. Kelly conveyed by warranty deed, for a valuable consideration, the remainder of the land here involved, less one acre, to her daughter-in-law, Mrs. E. A. Kelly. Thereafter, on September 16, 1938, Mrs. E. A. Kelly, by warranty deed, for a valuable consideration, conveyed to her daughter, Oma Spooner, thirty acres of the land here involved and which she obtained from Maggie S. Kelly, and on this same date, September 16, 1938, Mrs. E. A. Kelly also conveyed by warranty deed, for a valuable consideration, to her son, Hugh Kelly, the remainder of the tract involved here. All of the deeds affecting the interests of appellees, in the eighty acre tract, are absolute in form.

There is evidence that while Maggie S. Kelly owned the land here involved and other land, she had expressed a desire that it be divided at her death among her five children, and that during her lifetime she had divided among appellants money received from the sale of oil and gas leases and minerals in and on the land. There is also evidence that J. A. Kelly had given his mother, Maggie S. Kelly, some of the money from time to time which he realized from certain leases on the land, which his mother had deeded to him December 17, 1919.

Appellants argue that an implied trust was created; that appellees held the proceeds from the sale of leases, and oil and gas rights in and to the land in question as trustees, and that they (appellants) are entitled to an accounting. There is no contention that an express trust was created.

In *Stacy* v. *Stacy,* 175 Ark. 763, 300 S. W. 437, it was held that an implied trust is a term which includes constructive trusts, trusts *ex maleficio,* and resulting trusts, and it was there said: "These implied trusts, which arise or result by implication of law, may be proved by oral testimony. Section 4868, C. & M. Digest (§ 6065, Pope's Digest); *Bray* v. *Timms,* 162 Ark. 247, 271 and 272, 258 S. W. 338." In the Stacy case, Mr. Pomeroy's definition

of a resulting trust was there approved as follows: "Resulting trusts arise where the legal estate is disposed of or acquired, not fraudulently or in the violation of any fiduciary duty, but the intent, in theory of equity, appears or is inferred or assumed from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go with the legal title. In such case a trust results in favor of the person for whom the equitable interest is thus assumed to have been intended, and whom equity deems to be the real owner."

We also approved his definition of a trust *ex maleficio* or a constructive trust, as follows: "Second, well-settled and even common form of trusts *ex maleficio* occurs whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose, as, for example, the promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like, and, having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement."

After a careful review of the record, we think the testimony falls far short of establishing appellants' contention that an implied trust was created. As we recently said in *McKindley* v. *Humphrey*, 204 Ark. 333, 161 S. W. 2d 962, (quoting with approval from *Bray* v. *Timms*, 162 Ark. 247, 258 S. W. 338): "It is a well-settled principle that, while trusts resulting by operation of law may be proved by parol evidence, yet the courts uniformly require that such evidence be received with great caution, and that it be full, free and convincing. *Colegrove* v. *Colegrove*, 89 Ark. 182, 116 S. W. 190, 131 Am. St. Rep. 82; *Hunter* v. *Feild*, 114 Ark. 128, 169 S. W. 813. See, also, *Nevil* v. *Union Trust Co.*, 111 Ark. 45, 163 S. W. 162."

This court also held in the *Bray* v. *Timms* case that (Headnote 5): "In the case of a deed absolute in form there is a strong presumption against the existence of a trust, which must be overcome by a greater weight of evidence than a mere preponderance."

Here the undisputed evidence shows that the deeds, under which appellees claim title to the property involved, are absolute in form. There is no evidence of fraud in their procurement. There is no evidence that appellees did not pay a valuable consideration for their respective tracts or that they took title to hold in trust for these appellants or anyone else.

Finding no error, the decree is affirmed.